UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

J.L.M.,

Petitioner,

-against-

MARKWAYNE MULLIN, *et al.*,

Respondents.

---------------------------------------------------------X

26-CV-5875 (VSB)

**OPINION & ORDER**

Appearances:

Nhu-Y Ngo
Edith Sangueza
The Bronx Defenders
Bronx, NY
*Counsel for Petitioner*

Erica Silverman
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

**VERNON S. BRODERICK, United States District Judge:**

Before me is J.L.M.'s[1] ("Petitioner" or "J.L.M.") petition for a writ of habeas corpus (Doc. 1 ("Petition" or "Pet.")). Because Petitioner is entitled to a bond hearing at which Respondents bear the burden of establishing by clear and convincing evidence that continued detention is justified, the Petition is GRANTED. With regard to the bond hearing, the immigration judge assigned to this matter (the "Immigration Judge" or "IJ") must meaningfully

[1] As I indicated at the Order to Show Cause hearing, I am granting Petitioner's unopposed motion for leave to proceed pseudonymously. (Doc. 2.)

consider alternatives to imprisonment and present Petitioner with a meaningful opportunity to challenge the evidence arrayed against him.

## I. Factual Background and Procedural History

Petitioner is a forty-year-old Salvadorian citizen who has been living in New York for sixteen years. (Pet. ¶¶ 1–2.) Petitioner has been detained at Orange County Jail in Goshen for over a year. (*Id.* ¶ 1.) Petitioner has a pending asylum application and has applied for other fear-based protections based on his fear of gang members in El Salvador who murdered his mother and fears that he himself will be targeted as a gang member even though he is not and has never been a member of any gang. (*Id.* ¶ 3.)

Petitioner's mother was killed by an MS-13 gang member in 2008. (*Id.* ¶ 24.) As a result, Petitioner fled El Salvador in 2010 and arrived in New York in approximately May 2010, where he has been working in landscaping and at a restaurant, and he has also been the caretaker for his disabled brother since 2018. (*Id.* ¶¶ 7, 25–26.) Petitioner's detention began on June 10, 2025, when he was detained outside his home, taken to 26 Federal Plaza, and then transferred to Orange County Jail in Goshen. (*Id.* ¶¶ 7, 27.)

Petitioner has three criminal convictions: Aggravated driving while intoxicated in September 2016, (*id.* ¶¶ 31–32), aggravated driving while intoxicated in October 2022, (*id.* ¶ 33), and second-degree sexual conduct against a child in June 2024, (*id.* ¶ 34).[2] On June 27, 2024, after encountering Petitioner in prison, ICE issued an I-200 warrant and an I-247 detainer. (Doc. 10 ¶¶ 12–13; *see also* Doc. 12-3, Doc. 12-4.)

---

[2] Petitioner is likely to be incarcerated immediately upon arrival in El Salvador, "[b]ased on Mr. L.M.'s criminal convictions in the United States." (Pet. ¶ 44.)

The immigration judge to whom Petitioner was assigned denied Petitioner's application for fear-based protection on September 9, 2025, and the board of immigration appeals ("BIA") affirmed without an opinion on June 30, 2026. (Pet. ¶ 46; Doc. 12-8.) Petitioner filed a petition for review of the BIA's decision before the Second Circuit on July 10, 2026. (Pet. ¶ 47.)

On July 11, 2026, Petitioner filed the Petition for a writ of habeas corpus. (Pet.) On the same day, he filed a motion for leave to proceed pseudonymously, (Doc. 2), and I issued an order to show cause, barring Petitioner's transfer outside of the Southern District, Eastern District or the District of New Jersey and setting a telephonic status conference for July 16, 2026 at 1:00 p.m. ET and an Order to Show Cause Hearing on the Petition for July 30, 2026 at 11:00 a.m. ET, (Doc. 4). On July 16, 2026, I held the telephonic status conference and granted an adjournment of the Order to Show Cause Hearing until August 6, 2026 at 11:00 a.m. ET. (Doc. 8.)

On July 27, 2026, Respondents filed their response to the Petition, (Doc. 12), along with a supporting memorandum of law, (Doc. 11 ("Opp'n")), and a declaration from a deportation officer in support, (Doc. 10). Petitioner's reply was filed on August 10, 2026, (Doc. 15 ("Reply")), after I granted an extension request on July 31, 2026, which also caused the Order to Show Cause Hearing to be further adjourned until August 25, 2026, (Doc. 14). On August 25, 2026, I held the Order to Show Cause Hearing.

## II. <u>Legal Standard</u>

J.L.M. brings his Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to

law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## III. <u>Discussion</u>

### A. *Statute of Detention*

Petitioner argues that he is being detained under 8 U.S.C. § 1226(c), on the basis of his prior convictions. (Pet. ¶¶ 50–59.) Respondents argue in response that "Petitioner's detention shifted to [8 U.S.C.] § 1231(a) when his removal order became administratively final." (Opp'n 2.) However, on July 10, 2026, Petitioner lodged a Petition for Review ("PFR") of his removal order in the Second Circuit. (*Id.* at 1.) The filing of the PFR triggered the government's "forbearance policy" under which the Government has agreed not to remove any individuals who have filed a PFR in the Second Circuit and a motion for a stay. (*Id.* at 1–2.) The Second Circuit ruled that "Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review." *Hechavarria v. Sessions*, 891 F.3d 49, 56 (2d Cir. 2018). However, it has not explicitly decided whether the forbearance policy constitutes such a stay. *Id.* at 54 n.3.

I have already held twice that the forbearance policy is akin to a stay of removal proceedings and warrants finding that 8 U.S.C. § 1226 rather than 8 U.S.C. § 1231 governs the detention of an immigrant filing for habeas review. *Jack v. Decker*, No. 21-CV-10958, 2022 WL

4085749, at *6 (S.D.N.Y. Aug. 19, 2022) (agreeing with the "the overwhelming majority of courts in this Circuit [that] have found that the Forbearance Policy amounts to a court ordered stay of removal of the alien and that detainees with a pending petition for review are detained pursuant to § 1226" (collecting cases)), *report and recommendation adopted*, 2022 WL 16836918 (S.D.N.Y. Nov. 8, 2022); *Diaz v. Genalo*, No. 22-CV-3063, 2024 WL 4124756, at *3 (S.D.N.Y. Sept. 9, 2024) (similar). There has been no change in the governing caselaw since my previous rulings in *Diaz* and *Jack*, and indeed, most courts in the District have continued to rule consistently with my findings in those cases. *See, e.g.*, *Zamora v. Almodovar*, No. 25-CV-8643, 2026 WL 2076002, at *1 n.1 (S.D.N.Y. July 17, 2026) (holding that § 1226 applies because "forbearance policy has been described as an insurmountable substantive impediment to removal until the Second Circuit decides a petitioner's motion to stay." (internal quotation marks omitted)); *Singh v. Francis*, No. 26-CV-00344, 2026 WL 507890, at *3 (E.D.N.Y. Feb. 24, 2026) ("[I]n light of the structure and logic of § 1231 and the practical reality that the Forbearance Policy is a very clear impediment to a noncitizens immediate removal," § 1226 applies (internal quotation marks omitted)); *Ahmed v. Rhoney*, No. 25-CV-06662, 2026 WL 262553, at *1 (W.D.N.Y. Feb. 2, 2026) (similar); *Perez Flores v. Bondi*, No. 25-CV-306, 2025 WL 1921748, at *5 (W.D.N.Y. July 14, 2025) (similar). Respondents point to *Loachamin v. Kurzdorfer* as contrary authority. (Opp'n 11–12 (citing 792 F. Supp. 3d 353, 356 (W.D.N.Y. 2025)). However, even the court in *Loachamin* noted it was joining "the minority of its sister courts," in reaching the conclusion it did. *Id.* at 363–64.

"Section 1231 assumes that the immigrant's removal is both imminent and certain. The definition of the removal period [contained in that statute] is dependent upon the assumption that no substantive impediments remain to the immigrant's removal." *Hechavarria*, 891 F.3d at 55.

However, when removal is stayed pending a Circuit's decision over the BIA removal decision, "removal is not inevitable," regardless of whether that stay is pursuant to the forbearance policy or a tangible order of the court in that specific matter. *Id.* at 56. Thus, the *Loachamin* court's abrogation of the *Hechavarria* decision needlessly disrupts the statutory scheme of the Immigration and Naturalization Act, and, moreover, places additional burdens on the federal judiciary by forcing Courts of Appeals carrying out their statutorily mandated duty to review BIA decisions, *see* 8 U.S.C. § 1252(a)(5), to issue orders staying each individual proceeding rather than relying on the forbearance agreement in order to ensure that review remains under § 1226 rather than § 1231 and that the courts therefore do not "function as mere ministerial rubber stamps for agencies," *Hechavarria*, 891 F.3d at 56. The *Loachamin* reading defeats the purpose and function of the forbearance agreement and cuts against the best interpretation of the plain language of *Hechavarria*. *See id.* ("Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review.")

I see no reason to disturb my previous rulings on this issue. Therefore, I conclude that the forbearance policy acts as the functional equivalent of a stay and thus the principles animating the Second Circuit's conclusion that "immigrants whose removal has been stayed pending judicial review" should be considered detained under 8 U.S.C. § 1226 applies with equal force here. *Id.*

### B. *Due Process Analysis for a Prolonged Detention Challenge*

The Second Circuit has made clear that, as asserted in the Petition, (*see* Pet. ¶¶ 80–89), continued detention for more than a year without a hearing at which the Government must show that an immigrant is a danger to the community or a flight risk may result in a due process violation. *See Velasco Lopez v. Decker*, 978 F.3d 842, 856 (2d Cir. 2020) ("The Supreme Court

has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." (collecting cases)). "[I]t is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty. Accordingly, we conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." *Id.* Courts weigh three factors when considering what process is due under such a prolonged detention challenge: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). I address each of these factors below.

### 1. First *Mathews* Factor: Private Interest

The first *Mathews* factor requires consideration of Petitioner's private interests affected by the Government's action. 424 U.S. at 335. Petitioner's interest in freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The interest in being free from physical detention "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also United States v. Salerno*, 481 U.S. 739, 755, (1987) ("In our society liberty is the norm, and detention . . . is the carefully limited exception."). "While the Government undoubtedly has authority to detain Petitioner under Section 1226, Petitioner is entitled to 'adequate procedural protections' before being deprived of [his] liberty." *Mcdonald v. Francis*, No. 25-CV-09355, 2025 WL 3295906, at

*4 (S.D.N.Y. Nov. 26, 2025) (quoting *Zadvydas*, 533 U.S. at 690). "[T]he issue here is not the permissibility of immigration detention, but rather the process required in connection with such detention." *Valdez v. Joyce*, 803 F.Supp.3d 213, 217 (S.D.N.Y. 2025) (citing *Velasco Lopez*, 978 F.3d at 848 ("Detention during removal proceedings is a constitutionally valid aspect of the deportation process . . . our concern is . . . with the 'important constitutional limitations' on that power's exercise.")).

"[T]he length of time already spent in detention is a major focus in the analysis of this issue," and so too is "the potential length of time [Petitioner] may be detained without the Government ever having to show [Petitioner's] continued detention is justified." *Raspoutny v. Decker*, 708 F. Supp. 3d 371, 384 (S.D.N.Y. 2023) (granting a new burden-shifted bond hearing when petitioner had been detained more than seven months "without an end in sight" after remaining in detention pursuant to a bond hearing where he incorrectly had the burden of proof). The Circuit has also noted that "a presumptively constitutional period of detention does not exceed six months." *Velasco Lopez*, 978 F.3d at 855 n. 13; *see also Black v. Decker,* 103 F.4th 133, 151 (2d Cir. 2024) ("[A]ny immigration detention exceeding six months without a bond hearing raises serious due process concerns"). Given that Petitioner has already been detained for more than sixteen months and there is no "end in sight" to his detention, he maintains an exceedingly strong liberty interest.

Therefore, the first *Mathews* factor weighs in Petitioner's favor.

### 2. Second *Mathews* Factor: Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. In analyzing this factor, "[t]he only interest to be

considered . . . is that of the detained individuals—not the government." *Black*, 103 F.4th at 152 (citation omitted).

Because "Section 1226(c) sweeps in people convicted of many nonviolent offenses, and does not take into account when the prior crime was committed," *id.*, "the risk of erroneous deprivation is amplified," *J.M.P.*, 804 F. Supp. 3d at 393. Therefore, the Circuit has "found prolonged detention under § 1226(c) inherently [] entail[s] a high risk of erroneous deprivation of liberty. And [] 'almost *any* additional procedural safeguards at some point in the detention would add value.'" *D.C. v. Noem*, 825 F. Supp. 3d 309, 322–23 (S.D.N.Y. 2026) (quoting *Black*, 103 F.4th at 152) (emphasis in original).

Due to the paucity of procedural safeguards provided to such detainees under § 1226(c) "[i]t suffices to note that [Petitioner] has previewed responsible arguments in favor of his release on bond," for this factor to work in his favor. *Id.* at 323. Petitioner's pending PFR of his relief from removal does not indicate that he is currently receiving the process he is due, because this relief is "separate and apart from" a burden-shifted bond hearing. *Amides-Galdamez v. Barr*, 810 F. App'x 52, 53 (2d Cir. 2020) (summary order). Thus, "courts commonly order bond hearings notwithstanding that the noncitizen has a pending application for relief from removal." *D.C.*, 825 F. Supp. at 323 (collecting cases). Based on the lack of procedural safeguards that currently inhere to Petitioner's state of effectively indefinite detention, this second factor weighs in Petitioner's favor. *See Arana v. Decker*, No. 20 CV 4104, 2020 WL 7342833, at *5 (S.D.N.Y. Dec. 14, 2020) ("[T]he mere fact of a charge . . . may not be sufficient to carry the Government's burden of demonstrating that [Petitioner] poses a risk of flight or danger to the community. The process thus far a[ffo]rded to him has posed a substantial risk of an erroneous determination."). I agree with the weight of authority that where, as here, an individual has been detained for more

than a year and Respondents cannot show that he had an adequate chance to contest the evidence against him or advocate for his liberty, it creates a meaningful risk of an erroneous deprivation of Petitioner's constitutional due process rights.

For these reasons, the second *Mathews* factor weighs in favor of Petitioner.

### 3. Third *Mathews* Factor: Government Interest

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Government's "interests in detaining noncitizens under § 1226(a) [are] (1) ensuring that noncitizen[s] do not abscond and (2) ensuring they do not commit crimes." *Velasco Lopez*, 978 F.3d at 854; *see also Valdez,* 803 F.Supp.3d at 217 ("The Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" (quoting *Zadvydas*, 533 U.S. at 690)).

Although I acknowledge that the Government's interest in the detention of individuals who are a flight risk or danger to the community is "well established and not disputed," *Velasco Lopez*, 978 F.3d at 854, the imposition of a bond hearing where the Government is required to prove Petitioner's danger and flight risk by clear and convincing evidence does not impinge upon this interest. *See G.F.F v. Francis*, No. 25-CV-7368, 2025 WL 3141735, at *5 (S.D.N.Y. Nov. 10, 2025) ("If [Petitioner] poses either risk, then the Government has the opportunity to prove it at a bond hearing, thereby vindicating its interest. If it cannot, then continuing to detain [Petitioner] would not advance the Government's interest in any event."). Furthermore, the Government's interest, more than sixteen months after Petitioner's initial detention, has "diminished greatly" as "the Government has had an opportunity to put in motion its

considerable informational and investigative resources" into evaluating whether Petitioner is actually a flight risk and/or a danger to the community. *Arana*, 2020 WL 7342833, at *5. In other words, "[n]otwithstanding the Government's significant interest in protecting the public's safety, the Government is certainly able to present that interest at a hearing at which it bears the burden of proof," meaning that this factor is neutral, at best. *Raspoutny*, 708 F. Supp. 3d at 385.

Because the first and second *Mathews* factors weigh heavily in favor of Petitioner and the third does not favor the Government, I find that, as a whole, due process entitles Petitioner to an individualized bond hearing.

### C. *Alternatives to Detention*

"[C]ourts in this District overwhelmingly agree that IJs must consider [] two factors—alternatives to imprisonment and ability to pay—when determining bond for a detained immigrant." *O.F.C. v. Decker*, No. 22-CV-2255, 2022 WL 4448728, at *10 (S.D.N.Y. Sept. 12, 2022). Immigration judges must consider alternatives to detention to the extent they might mitigate dangerousness concerns. *See M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *6 (S.D.N.Y. Oct. 16, 2025) ("[A]t the bond hearing, the IJ must consider alternative conditions of release before making a determination regarding whether to set a bond" (collecting cases)); *Beltran Marroquin v. Genalo*, No. 24-CV-0637, 2025 WL 3241161, at *3 (S.D.N.Y. Nov. 20, 2025), *appeal withdrawn sub nom.*, 2026 WL 1122383 (2d Cir. Feb. 3, 2026) ("[A]n immigration judge could plausibly find that any danger [Petitioner] poses to the community [] could be ameliorated by an order prohibiting Petitioner from possessing a dangerous weapon, or the imposition of a curfew or other liberty restrictions short of incarceratory detention."). Indeed, as "numerous courts in this district have found[,] failing to consider alternatives to detention when assessing dangerousness violates an individual's due process rights." *Id.* at *4 ("[T]he need for

procedural due process protections—including considerations of alternatives to detention when determining whether Petitioner can safely be released—is high at this stage of detention. Petitioner risks the erroneous deprivation of his liberty absent those protections.”). Therefore, the Immigration Judge must meaningfully consider alternatives to detention at Petitioner’s clear-and-convincing bond hearing.

### D. *Appropriate Venue for Hearing and Additional Procedural Safeguards*

In his reply, Petitioner requests “that this Court, rather than the [IJ], should hold the bond hearing.” (Reply 7.) “In light of increasing evidence that bond hearing outcomes are often predetermined and that the immigration court is no longer a neutral venue, many district courts in recent months have ordered immediate release or remedies other than an IJ-conducted bond hearing in habeas proceedings.” (*Id.* (collecting cases).) I recognize Petitioner’s concerns that the IJ may not prove a neutral arbiter for adjudicating his bond dispute. *See USA: UN Experts Condemn Arbitrary Terminations of More Than 100 Immigration Judges*, United Nations (July 16, 2026) (“Since January 2025, information indicates that at least 135 judges have been terminated. . . . without cause or individuali[z]ed explanation. . . . These patterns raise serious concerns that immigration judges are being targeted on the basis of their perceived political affiliation, professional background or adjudicative record.” (cleaned up)); Nicholas Nehamas *et al.*, *How Trump Purged Immigration Judges to Speed Up Deportations*, N.Y. Times (Apr. 9, 2026) (“In interviews, more than two dozen immigration judges who have served under the second Trump administration described feeling a consistent sense of pressure to deport immigrants or risk losing their jobs.”); E. Tammy Kim, *Inside Donald Trump’s Attack on Immigration Courts*, New Yorker (Oct. 23, 2025) (“Between firings and resignations, the number

of immigration judges has dropped from seven hundred and thirty-five in 2024 to fewer than six hundred. . . . The judges who remain have seen their workloads double.”).

I am also mindful that some of my colleagues have begun routinely conducting bond hearings themselves rather than delegating such hearings to Immigration Judges, as “habeas corpus is an adaptable remedy, the precise application and scope of which changes depending upon the circumstances,” and that I have the authority to adjudicate such constitutional claims. *Luciano-Jimenez v. Catletti*, No. 26-CV-3546, 2026 WL 1831906, at *8 (S.D.N.Y. June 25, 2026) (granting a bond hearing before the District Court); *see also Astudillo v. Catletti*, No. 26-CV-6109, 2026 WL 2137780, at *1 (S.D.N.Y. July 24, 2026) (Under similar circumstances, “the Court will hold an individualized bond hearing for Petitioner”). However, as the *Luciano* court acknowledged, “courts in this Circuit have routinely ordered hearings before immigration judges where the Government bears the burden of proving by clear and convincing evidence that the noncitizen presents either a danger to the community or a flight risk.” 2026 WL 1831906, at *7; *see also D.C.,* 825 F. Supp. 3d at 325 (“[T]here is no basis to depart from the common practice of ordering a bond hearing before an IJ, whose expertise and experience in this area will enable efficient resolution of the proceedings consistent with immigration court precedents.”).

At this juncture, as I have previously concluded, I am not inclined to hold the bond hearing myself rather than to schedule a burden-shifted bond hearing before an immigration judge. *See M.P.L.*, 2025 WL 2938993, at *5 (declining to hold bond hearing in lieu of immigration judge in the absence of “atypical facts” (internal quotation marks omitted)). However, my current position on the appropriate venue for such hearings may shift should the IJ in this case or others before me fail to provide Petitioner and others similarly situated with the

process that they are due under the Fifth Amendment after a judgment from me that they are required to conduct a burden-shifted bond hearing for an immigrant detainee.

Accordingly, I conclude that Petitioner's burden-shifted bond hearing may go forward before the Immigration Judge. In the hearing, the IJ "may consider the conduct underlying criminal charges." *Reid v. Decker*, No. 19-CV-8393, 2020 WL 996604, at *12 (S.D.N.Y. Mar. 2, 2020). However, "the appropriate weight [in immigration proceedings] to be placed on pre-conviction documents such as arrest reports and criminal complaints depends in part on how specific, detailed, and otherwise reliable the materials are." *Mendoza v. Noem*, No. 26-CV-1260, 2026 WL 494479, at *4 (S.D.N.Y. Feb. 23, 2026). In other words, "the evidence must be 'probative' and its use 'fundamentally fair.'" *Id.* (quoting *Singh v. Barr*, 939 F.3d 457, 464 (2d Cir. 2019) (per curiam)).

Furthermore, as I have previously concluded, the Immigration Judge must meaningfully consider alternatives to detention, *see supra* § III.C. This means that "the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure [Petitioner's] appearance and the safety of the community," in order to justify detention. *Perez Flores*, 2025 WL 1921748, at *8.

If the IJ fails to meaningfully consider alternatives to detention or applies the incorrect legal standard to the bond proceeding, I maintain jurisdiction over this case to enforce my ruling. *See Beltran Marroquin*, 2025 WL 3241161, at *4 ("[N]umerous courts in this district have found that failing to consider alternatives to detention when assessing dangerousness violates an individual's due process rights." (collecting cases)); *R.R.M.C. v. Decker,* No. 22-CV-2952, 2022 WL 4639674, at *4 (S.D.N.Y. Sept. 30, 2022) (granting habeas relief when "IJ incorrectly applied" legal standards and burdens of proof regarding "whether Petitioner present[ed] a flight

risk and whether that risk can be mitigated by reasonable alternatives to detention."). Petitioner may file a subsequent motion to enforce this judgment should the IJ apply the improper standard of review at the bond hearing or fail to properly consider alternatives to detention.

"With these protections in place, [I am] satisfied that the hearing can proceed before the IJ." *See O.F.C.*, 2026 WL 74262, at *15.

## IV. Conclusion

For the reasons stated above, J.L.M.'s Petition is GRANTED. The Government shall provide an individualized bond hearing to Petitioner to determine whether his continued detention is justified within thirty days of this Opinion & Order. At the bond hearing, which must be before a neutral immigration judge, the Government must bear the burden of showing, by clear and convincing evidence, that Petitioner presents an unreasonable flight risk or threat to the community that cannot be mitigated by reasonable conditions of supervision or monetary bond.

"[T]he following conditions must be in place at [Petitioner's] individualized bond hearing: (i) the Government must carry the burden of proof to establish by clear and convincing evidence that [Petitioner] poses a flight risk or a future danger to the public; (ii) the IJ must meaningfully consider alternatives to imprisonment, including but not limited to release on recognizance, parole, or electronic monitoring; and (iii) the IJ must meaningfully consider [Petitioner's] ability to pay if a monetary bond is set." *M.P.L.*, 2025 WL 2938993, at *7 (quoting *Reid*, 2020 WL 996604, at *12). Should the Government fail to provide such a hearing within thirty days of this Opinion & Order, in the absence of consent to delay the hearing, the Government shall immediately release Petitioner from detention.

To ensure that the relief granted in this Opinion & Order is effectuated, the Government is enjoined from exercising an automatic stay should the Immigration Judge determine that release on bond is appropriate. *See O.F.C.*, 2026 WL 74262, at *15 ("Numerous courts around the country have in recent weeks held that automatic stays violate procedural due process because they result in continued detention without requiring any articulated basis or individualized findings."). Further, the Immigration Judge may not rely on 8 U.S.C. § 1225 as a basis for Petitioner's detention. *See Cunha v. Freden*, No. 25-3141, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026) ("Section 1226(a) governs detention of noncitizens . . . who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.").

I retain jurisdiction over this matter to ensure compliance and to grant Petitioner release should my Opinion & Order not be complied with. The Government is ordered to provide this Opinion & Order to the Immigration Judge who will be presiding over the bond hearing within fourteen days of this Opinion & Order and to provide me with a transcript or recording of the bond hearing within one week of the hearing being held.

SO ORDERED.

Dated: October 30, 2026
New York, New York

Vernon S. Broderick
United States District Judge